The court will call the next case, 21-1979, Amanda Mingo et al v. City of Durham. Yes, and uh, representing the City of Durham, Mr. Church. Yes, your honor. Good to have you with us, sir. Thank you, your honor. May it please the court. This case arises out of a collision between a train and a vehicle that plaintiffs allege was caused by an over-length crossing gate. And here the plaintiffs sue the City of Durham with respect to that crossing gate. The district court erroneously held that the city's general duty to maintain streets and sidewalks applied in this case to the allegedly defective railroad crossing gate and pierced the city's governmental immunity. That decision is wrong for at least two reasons. First, the crossing gate is a traffic control device and cities are entitled to governmental immunity for the installation, operation, and maintenance of traffic control devices. Second, a railroad crossing gate is not a public street, sidewalk, bridge, or alley and its maintenance is governed by separate statutes that the district court failed to apply here. Because the district court erroneously failed to apply the correct law, we ask this court to reverse the district court's grant of summary judgment. I'm sorry, can I make sure I just understand, I want to understand the two framework. Your second point is that where the long gate, what I'll call the long gate just so that I understand, that it didn't go over a street? No, your honor. You said it's not a public street. I mean, when I look at the diagrams and pictures, it looks like a street. Well, and the plaintiff was certainly on a public street when he was hit by the train. And so I can answer both of those questions, I think, together. The distinction here is not whether a railroad crossing is or is not a public street. I think that question doesn't need to be resolved in this case. The issue here is that a crossing gate is in itself regulated by a separate statute than the public streets and sidewalk statute. And so when we look to see what a city's obligation is with respect to a railroad crossing gate, we need to look to the specific statutes that regulate railroad crossing gates and not the general statutes. I understand, but I think we do have to resolve the question because you said it's not a public street. And so I just want to make sure I understand. The arm that comes down that's allegedly too long, I'm going to not use allegedly, but just given where we are, like the ground that's underneath that gate is a street, right? I mean, I don't understand how, I mean, I understand you might want to talk about the railroad itself is not, but, like, the ground underneath the bar, I don't, I think we've got to, if we don't agree that's a street, then we've just got a fundamental disagreement about, like, the facts. So for purposes of this argument, we can assume that's a street. I don't. If you represent the city, you should know if it's a street or not. Yes, yes, and I think that there is a question, I think an open question on the record, admittedly, as to the physical ownership of the space. Did the railroad own the tracks, the space? Well, it's a street, but it could be a question of who owns the right-of-way or something. That's correct. But the city of Durham uses it as a public street. That's correct. That's correct. And there was a railroad traffic bar that came down, and they claimed the bar was too long, and it ended up causing the train to run over the pickup truck and injure people. That's correct. And so the question here is not what is the city's general duty to remove obstruction. Immunity, sovereign immunity. And you want out of the case the city's not liable because it has immunity. That's correct, Judge King. With respect to whether that traffic bar or whatever it is is safe. That's correct. And the question here is not what the city's – The eagles threw you out, that part out, since you're not going to give me that immunity. That's correct. And the question – You're on an interlocutory appeal. That's correct, Your Honor. The question here is not the city's general duty to maintain a railroad crossing free of any random obstruction. So we're not talking about, for example, a boulder that was dropped in the intersection. What is the city's duty to remove the boulder? We're talking about what is the city's duty to remove a crossing gate. And the crossing gate here is specifically – Isn't the duty to keep the streets safe for public passage. And it seems to me that, at least my perspective, and perhaps you could address this, is that in order to prevail in this appeal, you're going to have to convince us that these statutes can't be read harmoniously. And I don't see why they can't. The city can certainly elect to do certain things, contact the railroad, but that doesn't remove the city's duty to keep the public streets safe. And to me, the key to this case is how you characterize the duty. And it seems to me that you're talking about the duty to alter the gate when the duty that's alleged in this case in the Negligent Act was in not keeping the streets safe for passage. And I think that opposing counsel makes that point in its brief. By saying we're not trying to keep – trying to say that the city had a duty to cut the gate down to size. What we're saying is the city had a duty to – if it wasn't going to do anything with the crossing gate, it had a duty to divert traffic. The duty is the street and the city's duty under 296 of the statute to – of the state code to keep the streets safe. And so why can't these statutes be read harmoniously? I don't think you've answered that in your brief. The duty depends to some extent on the nature of the obstruction. And when the nature of the putative obstruction is a traffic control device, the city is immune from any supposed liability with respect to the – But what she's asking is why do you read 296 to include this parenthetical at the end, right? That is, except when it's a crossing gate. Because – Because it just says obstruction, right? Keep the streets safe. Remove obstructions. And the North Carolina courts, going back to Cooper, have defined obstruction broadly to be – This is a state law issue, right? Yes, Your Honor. State law issue. You're running us to decide this state law issue. Why don't you go to the – why don't you stay in the state court and let them resolve it? Well, Your Honor, this – to answer – I'll try to answer both questions. This case was removed to federal court because there was a federal instrumentality involved in it. It's no longer in it. That's correct. The court could have dismissed it, but it exercised supplemental jurisdiction over – That's correct. So we – We need to follow state law. And we can follow federal – state law. And, Judge Richardson, to answer your question, with respect to state law, state law in Cooper has defined obstruction broadly to be – can be anything that makes passage less convenient or secure. And that would include the defective operation of a traffic control device. But the North Carolina courts have uniformly said that when a traffic control device is defective in any respect, the municipality is entitled to immunity. The difference in those is that those cases, they were not an obstruction. You had an inoperable traffic control signal. The other case, you had a stop sign that had fallen by away from the road. There wasn't an obstruction to the public street in either of those cases. And you have an obstruction to the public street in this case. By your own admission, it's a public street. Well, actually, the immunity for installation, operation, and maintenance of traffic control devices stretches all the way back to the Hodges cases versus City of Charlotte in 1939. And in that case, the immunity was accorded when a truck was in a traffic collision on its way to repair traffic lights. And the court said, this is a governmental function. Replacing traffic lights is a governmental function. And what happened in that case was – The court wasn't – correct me if I'm wrong. It wasn't addressing the obstruction language of Section 296. It wasn't in play there, but it shows the breadth of immunity. Right, but Cooper acknowledged that. I mean, Cooper said that an obstruction can be anything, including vegetation, which renders the public passageway less convenient or safe for use. And this certainly, the long crossing gate, certainly made it unsafe for use. So how do you get beyond that definition of Cooper? And then when you look at the court's decision in Sisk, in which the plaintiffs in that case alleged that the city had failed to control traffic, and the court said, notwithstanding what Cooper says about what an obstruction can be, we don't read Cooper to say that an obstruction is anything that makes it less convenient or safe. Right, because a traffic control device isn't an obstruction. And state law kicks in to say that if a statute – that if a traffic control device is inoperable, certain other rules of the road apply. Namely, the driver on the right, different rules. So that's not an obstruction, as we have here, which is an obstruction. So, you know, you've got to explain how you get beyond that Cooper definition, I think. The difficulty here is, you know, a crossing gate is designed to be an obstruction. It is designed to come down and obstruct traffic. So the difficulty here is if we say, OK, well, a railroad crossing gate, when it's defective and it obstructs traffic incorrectly, then the city's liable. Right, but the statute says unnecessary obstruction. OK, so having the crossing gate extend into the opposing lane of traffic is not necessary to control the traffic on the road. Well, in that sense, the district court erred in resolving that matter as a matter of law for the plaintiffs in any event. There was at least evidence in the record that – You didn't appeal that. So can you talk to me for a minute about – assume you lose on everything you've said so far. You seem to make a separate argument about Wilkerson, right, under Wilkerson, which says if it's an obstruction and you have a duty to clear it, you don't have a duty if you lack control over the item, right? So if it's vegetation growing on the railroad's property, you lack control over that vegetation and by control, direct control. And so even if you would have had a obligation, you don't because you lack control over it. Help me understand why you lack control over this. Under that argument, what's the idea that you lack control over this gate? Yeah, so the lack of control here is both as a matter of statute and as a matter of contract. So pursuant to the – Did you detour traffic? Well, that would have been true in Wilkerson as well. In Wilkerson, the city could have detoured traffic around the obstruction. The court doesn't address that issue. It wasn't addressed. Isn't that the obvious question that should be asked? Well, it was impliedly not a duty of the city in Wilkerson if the court found that the city hadn't breached its obligation there. Here, the city lacks control. But so I thought what you would say to that is the fact that they have other police powers under Wilkinson's concept, right? They have nuisance powers. They have all sorts of police powers. But Wilkinson seems to stand – Wilkerson, Wilkerson seems to stand for the proposition that you must have direct control. And if you lack direct control, the fact that you might have indirect control, that is you can shut the street down. You could bring a nuisance action. You could write them a letter and ask them to do it. Like that sort of indirect control doesn't suffice. Absolutely. That is the clear teaching of Wilkerson and Sisk. Wilkerson does say, nowhere in the plaintiff's complaint do we find an allegation that the obstructions existed on city property. That authority is a prerequisite to responsibility. This obstruction of the railroad gate existed on city property, the public street, did it not, by crossing the public street? Actually, the allegations here in the complaint are that the city – that the gate was on railroad property, owned by the railroad. But you're saying it was on city property. And we take that you know – you know the facts in this case regarding the fact that the city is a public street. I think the fact that it's on a city right-of-way doesn't make it on the city property. Well, let's get back to this then. As the attorney for the city, are you representing that this is a public street or is not a public street? Tell us. Without any waffling, is this a public street? I don't think it's necessary to answer that. The gate – She's asking you. Answer her question. We can assume that a street passing over a railroad is a public street, yes. But the gate – The duty of candor to the court. Yes, Your Honor. A public street – it is a public street passing over the railroad. Your point is that that doesn't mean that the crossing gate is a public street because it's not on the street. It leans down over the street. That's correct. And so it could be a public street and yet the arm itself be something that you lack direct control over. That's effectively your argument. That's correct, Your Honor, both pursuant to the statute and pursuant to the joint agreement in the record at Joint Appendix 92. Thank you. You've saved some time. Mr. Acton? May it please the Court, I'm Bill Acton. I'm Fred DeVore and I am representing the guardians ad litem for the two minor plaintiffs who were injured in this. Good to have you with us, sir. Thank you very much. Just to keep things on track, I think the Court would do well just to look at the district court order and start from there. It said that the plaintiff's claim arose out of the city's violation of the statutory duty to remove unnecessary obstructions from the roadway. And government immunity against such claims have been waived and she cites 160A-296A-2. And their briefs, it's all 296, much broader than A-2. A-2 just has to do with streets with unnecessary obstructions. Doesn't fit their argument that it's really more general than the railroad crossings discretionary statutes. She then says there's no disputed questions to the material facts. And that's true. There are no disputed questions about the facts here. The railroad gate came down and obstructed Driver Street in the northbound lane of Driver Street, which was the exit lane when train arrival is imminent. Amtrak trains come through there at over 50 miles an hour. One that hit our clients were at full throttle. Is that right in the middle of the city, pretty much? It's within city limits. I'm not that familiar with Durham. It's not at downtown Durham, but it's kind of inner city, best I can tell. But you're not at downtown Durham. That's all right. Can you turn to the argument that we were finishing with, which is assume there is such a general duty to remove obstructions, but the North Carolina courts in Wilkerson say that that duty doesn't extend to obstructions or interferences that the city lacks control over, right? The control is the sort of piece of the story. And the record here seems, I don't think there's a dispute about it, but based on statute and contract, the arm of the gate, once installed, is within the control of the railroad, not the city, right? And so, you know, this is the argument that they make. In your brief, like, you don't respond to it at all. And so I just want to give you the opportunity to explain why either the city— I just want to understand your response to their argument, given that you didn't respond to it. Let me first explain—tell you what I think Wilkerson is saying. A couple of things. One thing's never mentioned, and then go to Hunt and some statements out of Hunt, which kind of go to the crux of your question. Wilkerson discussed—it was pled that the city violated—I think it was Durham, if I'm not mistaken. The city violated a duty pursuant to 298, and the court said that's not a duty statute. It's discretion. Then it goes on to discuss the duty under 296A2. Doesn't go through this dichotomy that got nullified by 298 that they're arguing. It just said, but we can't rule with you. It said that's a good statute. They have a duty. We can't rule with you because of what Judge Keenan said. You didn't plead it right and show there was evidence of control. But they also go back in discussing the 298 and the discretion. It says courts are not going to interfere with the city's discretionary powers or nonperformance of their powers unless there's an abuse of those powers, in which case there would be liability. Well, here you've got—this was going on for 19 months. This thing was blocking traffic onto a railroad gate, and I would submit to you that that is textbook discretion of their powers not to get something done. But they can get done. I'm sorry. I don't say that. I'm not sure I'm following that. So I think you agree. I mean, the part—I get Wilkinson has two different pieces, right? There's a 298 piece and a 296 piece. In the 296 piece, they say if you lack control, you don't have a duty, right? And I don't think that was like just a pleading point. I mean, that was a principle of law. And the point here is that the railroad had control over the arm. They didn't have control over the street underneath the arm. I get that. But the arm was under the control of the railroad. The city has control over the street, and that's what the focus is. That went through in Wilkerson, right? So the obstruction in Wilkerson was on the property of the railroad, right? And the court said, yeah, the duty applies, right? The 296 applies, but because they lack control over that property, they're not bound by that duty. Under 296A2, because it wasn't the city's property. City—that just speaks to city streets. They have a duty to keep their streets clear of obstructions. And in Wilkerson, it neither was pled or shown that they had control over the obstruction there. As I understand, the vegetation—correct me if I'm wrong. Right, but the vegetation on there—the railroad's vegetation obstructed the road. It was next to the railroad. I don't know if it was railroad vegetation or not. I don't know who owned it. That part I don't know, but the city couldn't— I thought Wilkerson said it was on the railroad's property. I don't recall that. It could be. I don't recall that. I thought it wasn't pled. It was just decided about the city. But what they did say was, where it is a discretionary statute, they're not home free, even if you agree with them that 298 controls, unless you agree that they're letting—doing nothing about that gate obstructing that street and blocking cars on a railroad crossing for 19 months before this and exposing all those cars and the people in them to getting hit by a train is an abuse. I understand that. Did the district court rule on the abuse of the 298 discretion? They just cited—they were just quoting and explaining the law. They were quoting Cooper on that. But I'm talking about the district court below, in this case, didn't say that— In our case? Yeah, they didn't say that Durham violated its discretionary duty under 298, right? It said that it violated its duty under 296. Right. That's right. I'm having trouble understanding why the abuse of their discretion under 298 is relevant to this case. My point is, they're trying to show that it is a—they have discretion because it's a railroad arm case under 298. No, no, no, but I—so I'm not—that's not the Wilkerson argument, right? I understand that's a separate argument. That's in Wilkerson. I'm just pointing out that. That's all—the only reason I brought that out. That had not been pointed out before. I don't know if I'm losing you. I think I am. I think I got lost, but maybe that's my fault. I'm sorry. Okay. Hunt versus Highpoint. Yeah, Wilkerson talks about failing to remove—that the plaintiff alleged the failure to remove a large mound of dirt, a metal building, and bushes at the crossing. It doesn't really say on whose property it was, except that we know it wasn't the city's. Do you know the record in Wilkerson to any greater detail than what the court reported here? No, ma'am, I do not. Okay. Just what the case said. Okay. Well, the court was also very interested in the fact that this was a traffic improvement project that was being built out in terms of its immunity analysis. And do you draw any distinction here in the present case with the court's focus on that in Wilkerson? You mean as far as our case? Because this was part of the preemption? In other words, is there any evidence in this record that there was any kind of improvement project like the improvement project that was being conducted in Wilkerson? There had been an improvement in a preemption system put in place years before. But there was no ongoing public improvement project that was underway as there was in Wilkerson? No, ma'am. Okay. There wasn't. In Hunt, there's some language I think may be pertinent and answer some questions. High Point argued that since it had – Hunt is a case where a fellow fell off a bridge at night. It was dark. Is that the Court of Appeals or the Supreme Court? It's a Court of Appeals case, I believe. I'm sorry, Supreme Court, 226 NC 74, 1946 case. And 36 SE 2nd 694. And if you look at 696 and 7, two things I'm going to read kind of come out of that. Let's see. High Point, it was pled that the city was negligent because this was a dangerous bridge. A fellow had fallen off, and part of the danger was it was unlit. And they should have put lights up. And High Point argued that they didn't have a duty to install lights. That's discretionary, and therefore, they have government immunity to that. And the Supreme Court specifically pointed out that cases stating that are confined to situations where the statute imposing the duty to maintain streets safe for travel were complied with. Here they were not. That's at 36 SE 2nd at 696. Then it says in North Carolina where the planning or construction of a street or bridge has defects, the city has government immunity. But if the plaintiff had predicated the charge of negligence solely on the negligence in the original construction of the street, not in the breach of the incidental duty of safeguarding the danger thus created, the defendant might have relied on these cases with assurance. But the allegations in the complaint and appeal raise the question whether it was the duty of the city to provide ordinary means to alleviate the danger or work, avert the injury. It says North Carolina cases are uniformly against the defendant on that. That's at 36 SE 2nd, 695. The law is real clear. The focus is what Judge Eagles decided the motions on, and that is Durham failed its duty to keep the northbound lane of Driver Street, there's no question in any of the facts, Driver Street's a Durham street, free from obstructions. They had two choices to do it, best I can tell. They could close the street. In cases, Spies and I think Miller will say where there's discretion and they kind of harmonize them, the court won't interfere with the discretion, but the means is to keep the street safe. But the duty to keep the street safe is never waived and it never goes away because the duty is to the people using those streets. And so the court, Durham had two options, seems to me, to keep it safe. Close the street as long as that danger's there. For 19 months they didn't do that. They let it go. The only other option is to use 298 and the discretionary statutes and just get on the phone and tell Norfolk Southern, replace your gate, you're blocking our traffic, which they would have gladly done. What about the idea that if they just cut the gates off, right? So like a traffic line, instead of blocking the street off, they just opened all the gates. And they said, you know, since they're defective, we've got to open them all. And I get that that might create some danger, but there wouldn't be an obstruction anymore, right? Who are you asking me, Durham doing that or Norfolk Southern? I don't know that they've got the authority to do that, but let's assume for a minute that they do, right, that they unplug them, right? So imagine there's just a plug. I know there's not. I guess to answer your question is I guess the obstructions would be gone, but they still have a duty to maintain the streets safe for the travelers, and that would be inherently bad. Right, but that would be like the stoplights that stop working. That would be a worse situation. Right. I mean, they'd still violate their duty, but just not the specific one that this case is involved with. I don't think that's an option for them. Okay. I think Mr. DeVore wants to correct me. Mr. DeVore, you're representing the same clients. I do, Your Honor. We all share in the argument. We are, and I have just a brief argument to make. Well, it's good to have you here as well, sir. Well, thank you. Some people refer to me as an old country lawyer, and I don't know whether that's true or not. Old is true. Welcome to the Fourth Circuit. We need some good country lawyers. I try to make cases as simple as I can make them to understand them for me, and so what I did in this particular case is I found the four facts that are not a dispute. I want to begin with those four things, and then I want to give you an illustration that I think addresses both Judge Keenan and Judge Richard's issues with Wilkerson. I think I can explain that. So what we know is, and although it took a while to get there, Driver Street is a city street of Durham. There is no question about that. It's admitted in the pleadings. It's admitted throughout the record. That's not an issue. Number two, it's also known and admitted that 19 months prior to the crash, Durham inspected that railroad crossing, and they did so pursuant to a preemption agreement that requires them to inspect the gate with a train coming through. There's no documentation they did that, but 19 months earlier they took photographs even of the elongated gate, gate E, on the northbound lane. So that's admitted. The third admitted fact is that when the gate was lowered, that is gate E, the northbound gate, it obstructed cars from getting off the tracks. And so that you understand, Judge Richardson, your question about all the just raise all the arms up, there are three sets of railroad tracks go through there, two at least, or at least one of which is a high-speed Amtrak track that Mr. Acton did. I'm not saying it would be a good idea. Let me be very clear, right? I'm just asking whether, like, that's the point of hypotheticals, right? I'm not suggesting to make note of this, Durham. I'm not suggesting you do this. It would get rid of the obstruction. There's no question about that. Right. But my point was it would eliminate the obstruction. As Judge King said, then we open another whole issue in terms of the liability and the dangerousness. What's your third fact again? The third fact is that when they lowered the gate, gate E obstructed the cars. And in this case it was three cars, actually, that could not get around the gate, and the last one being, unfortunately, the vehicle that Mr. Heim was driving. And then the fourth point that seems undisputed is the language that's found in 160-296, A2. And it imposes a mandatory, non-delegable duty to remove obstructions. Now, if you agree with those four premises, or those four things which I think are not disputed, then I want to give you an illustration that I think addresses Wilkerson. Assume, for the purposes of this argument, there's a large tree that's located beside the road but not on the city's property. The limbs perhaps extend over the road, up in the air, but the tree itself is not on city property. The city might have the discretion to limb up those limbs that come over the road, but they don't have the discretion or the ability or the authority to cut down that tree. Now, assume, for purposes of this illustration, that the tree then falls down, falls from the other owner's property across the road and creates an obstruction. When that occurs, then you assume that the city has inspected the road and sees the tree down across. They see the obstruction, just like Durham did 19 months earlier. Then the question becomes, what then is the duty? And as Mr. Acton aptly said earlier, there are two things that could happen. One is that you could remove the obstruction. Now, you may be able to go back later and bill the homeowner, the landowner for a defective tree or something, but the duty at that moment is to remove the obstruction. And if they can't remove the obstruction for whatever reasons, they don't have the equipment, the tree is too large, it takes too long, whatever it is, then there's an absolute duty to close the street. What is missing, however, is there is not a duty to do nothing. And the failure of Durham to do anything, to stick their head in the sand, that's the problem in this case, right? That you just can't do nothing. Once you have discovered the problem, then you simply have got to make the effort to either make those streets safe for the people that use them, safe for the kids in the back of the pickup truck that were hit in this case. That's the duty that Durham violated, just as Judge Eagles found. So can you help me understand that hypothetical? Because the hypothetical you give, you know, in Wilkerson, what it says is there's not a duty of an area that was controlled by the railroad, right? That's the Wilkinson-Wilkerson principle. And so I get that when the tree falls in the road, because it's now on the property of the city, right? It's in the road. But the challenge we have here is that this railroad gate didn't fall. Had it fallen off the hinges and landed on the road, it's an obstruction. I'm with you. It's above the road, and by contract and by statute, when it is above the road, it is controlled by the railroad. That's the trouble. Do you see the trouble I'm having? The issue, though, is the road itself, I mean, the arm itself, the gate, is at the height that prevents cars from going. So whether it's laying on the ground or whether it's six inches off the ground or whether it's three feet off the ground, as this one was, it obstructs the traffic from going off. I agree it's an obstruction. I mean, I'm really trying to understand. I mean, I'm not totally sure Wilkerson makes sense, right? But I'm just trying to apply it, right? Our job, as Judge King mentioned, is just to try to apply the law that we've got, right? And so I guess what I'm trying to figure out is, like, how I say it's within the control of the city, which Wilkerson contrasts with an area that's controlled by the railroad. Here's how it is. May I answer it a little bit over time? Please. Well, you go right ahead. As long as you get questions, you keep answering. Thank you, Judge. If the arm is in the air and the arm is on the railroad property, I would probably concede Durham has nothing they can do about that. But once that arm comes down, crosses the city street, creates the obstruction, that's where the duty arises. That's where Durham has got to either close the street or they've got to do something to get the obstruction removed. It's effectively like the tree is falling. The fact that it's three feet off the ground doesn't make a difference, is the idea. Correct. We respectfully, therefore, ask the court to affirm the decision of Judge Eagles and find that Durham has violated its statutory duty to keep streets free from obstructions and by doing so, refuse to excuse Durham's negligence on the basis of governmental immunity. This will allow these catastrophically injured children their day in court. Thank you very much. Thank you, sir. Mr. Church, you've saved some time. Thank you, Your Honor. Can you start with this last idea because I'm still struggling, obviously. So I assume you agree if the tree falls in the road, it's an obstruction and the city has to remove it. And so help me understand why that doesn't answer the question here because the arm goes across, the city's property runs to the sky, right? We often say that in property law. And so once it's three feet off the ground, it doesn't matter that it hit the ground or not. It's like the tree in the road. So, Judge Richardson, I agreed initially with your distinction. The tree, when it falls on the road, it is now within the city's. It's on the city's property. It's within the police powers. When the crossing gate goes down under its normal operation, that doesn't change the character pursuant to statute and joint agreement and the joint agreement that it is still within the railroad company's full custody and control, both under the railroad crossing statute and under the joint agreement. Can the city contractually delegate its duty? So assume it has a duty. Can it enter a contract with the railroad to say if this tree falls in the road, it's your responsibility to remove it? So the North Carolina Court of Appeals decision in Steele versus Durham suggests that it could. So the city of Durham in Steele argued in that case that it shouldn't be liable for a hole in a sidewalk. And the court in Steele actually said, if you had delegated by contract to the Department of Transportation, this might have worked, but you didn't. So the court in Steele actually said that might work. Here, I would go even further and say we don't need a contract because we also have a statute that says the maintenance is to be performed by the railroad. So I know if I do have a contract, but I also have a statute that doubles up that and says the maintenance is to be performed by the railroad. So I don't even have to answer the question about whether a contract is sufficient. But the Court of Appeals in Steele has said in the case that you could delegate that, as a matter of fact. And earlier in my friend's argument. Let me ask you a question. We're talking about the downstream ramp of these North Carolina cases. This is all state law. And the Court of Appeals of North Carolina is the intermediate court of the state. And their rulings are what kind of precedent as to being state law? Because Wilkinson, Wilkerson, or whatever it is. In this case, the other case you just mentioned are Court of Appeals decisions. That's correct. So they're not from the highest court. But given that they are consistent. What's the principle of law in North Carolina as to whether they're binding or not? Or controlling? I wouldn't say that they're controlling. But given their consistency, there would be no reason for the court to disregard them here. But the North Carolina Supreme Court's rulings are the law of the state. That's correct. The Court of Appeals rulings are not necessarily the law of the state. That's correct. And there's nothing in Wilkerson that's inconsistent with Supreme Court law on these issues. It was discussed here about what if the city of Durham simply raised the gates or had the gates raised or eliminated them. Wouldn't that be, isn't that an option? In fact, that is an option. And I think we all agreed in the courtroom that's a bad option. But it is expressly an option under the statute. And that's a public policy implication that this panel has to consider here. When we say we're not going to treat railroad crossing gates like other traffic control devices. The statute's expressly authorized but do not obligate cities to require their installation. And so both Cooper and Wilkerson held that a city is completely immune from its decisions about whether to require their installation. And in fact, in Wilkerson, you know, both in Wilkerson and Cooper, the courts there held that the failure to install warning gates and bells and whistles at railroad crossings was an issue for which the city was immune. Right, but that's the exercise of the city's discretionary authority to determine what traffic control devices are required. That's distinct from keeping the ones that are in existence from creating an unnecessary obstruction to the street. And that's the distinction here that I'm not sure you're addressing. Well, it is, there is, the point that I'm making there is there's no reason to treat those crossing gates any differently than other forms of traffic control devices. Because the traffic control devices are not obstructions. Any malfunctioning traffic control device is an obstruction within the meaning of Cooper. How does it limit movement? How does a non-functioning traffic signal keep people from driving? Cooper defines an obstruction to be anything that makes the public passage less safe and secure. And in that definition, anything that malfunctions is an obstruction within the meaning of Cooper. Well, let's get to the language of Cooper here because I'm not sure Cooper says, let's take a look. I've got all these cases stacked up. Okay. Cooper says an unnecessary obstruction can be anything which renders the public passageway, anything which renders the public passageway less safe or convenient for use. And in that case, the issue was the failure to install automatic signals, right? That's right. And so I would say, again, any malfunctioning traffic control signal would qualify as an obstruction under Cooper's definition. And so we can't square Cooper with the general immunity for the installation, maintenance, and operation of traffic control signals. Right. But the court was relying on the discretion afforded the city by Section 298 to exercise its discretion in requiring improvements. So that's the discretionary exercise of authority by the city. Do we need this kind of traffic control device? That was what was at issue in Cooper, okay? Here we have a decision that's already been made. We need a crossing gate. And then the issue is do we have to do anything about something that prevents movement on the public street? So it's a different issue. Cooper was talking about the discretionary authority and the discretionary duty. To exercise a decision-making power to install that kind of a device. And once installed, here the plaintiffs affirmatively argue that it is a traffic control device. But that's the essence of the immunity determination. If the city is making a discretionary determination whether to install a device, that is an exercise, a legitimate exercise of governmental authority. That is not inconsistent with the duty to keep the streets safe. And the court in Kusina said once installed, the operation and maintenance of those devices still continues to be accorded governmental immunity. Your Honor, I see no time to explain. Well, the court in Kusina didn't like what it was doing, right? It was concerned with whether they had to follow this ruling in Roop, right? It did, Your Honor. Okay. What was at issue in Kusina? Kusina was a fallen stop sign. Right. And it wasn't obstructing the road. So, again, you have a traffic control device that was inoperable but not obstructing the public street. So I don't think your case is on point. It was obstructing within the meaning of Cooper by making the passage less safe and convenient. Mr. Church? Thank you, Your Honor. Appreciate it very much. Thank you. I want to particularly mention to you that if we didn't have this pandemic restriction still going on, we would leave the bench at this point and come down to the well of the court and greet you lawyers from North Carolina and tell you what a fine job you did, shake your hands. We'll just have to take that from the bench and defer the handshake until the next time you're up here. And I should mention, my friend Judge Paul Niemeyer, when he presides over panels, he always, not always, but most of the time, he mentions that that tradition of the Fourth Circuit, to shake hands with the lawyers, was initiated by Judge John J. Parker, Chief Judge of the Fourth Circuit back in the early 1930s. And Judge John J. Parker, if I recall, was a lawyer who came on the Fourth Circuit, was a lawyer in Charlotte, a native of North Carolina. So the tradition, you're in the tradition in many ways, and we really appreciate you and look forward to having you back. Thank you, Your Honor. Thank you, Judge.
judges: Robert B. King, Julius N. Richardson, Barbara Milano Keenan